## THE STATE *v.* JOSEPH JERRY TAYLOR.

A mulatto having been examined in chief as a witness for the State—on cross-examination it appeared that he had been a slave, whereupon the prisoner's counsel called on the court to exclude his testimony, there being no evidence that he had been emancipated. *Held:* the objection came too late—there being no averment that the incompetency of the witness was not known before the examination in chief. The color of the witness would naturally have suggested an inquiry into his condition on his *voir dire*; and as the prisoner had a person in court to prove that the witness had once been a slave, there could have been no surprise when, on the cross-examination, the witness testified to that fact. The prisoner could not be permitted thus to take the chances of the witness' testimony if it had been favorable to him, reserving the right to object to his testimony if unfavorable.

Where the objection to the competency of the witness arises from *his own examination*, he may be further interrogated to facts tending to remove the objection, though the testimony might, on other grounds, be inadmissible. When the whole ground of the objection comes from himself only, what he says must be taken together, as he says it.

APPEAL from the First District Court of New Orleans, *Robertson,* J. *Moïse,* Attorney General. *Field & Wooldridge,* for appellant.

SPOFFORD, J. The prisoner, a free man of color, indicted for the murder of a slave, was convicted of manslaughter and sentenced to imprisonment at hard labor for seven years.

Upon appeal to this court he bases his only claim to relief upon a bill of exceptions to a ruling of the District Judge upon a question of evidence.

A mulatto, named *Charles Robinson,* was offered by the State as a witness, and sworn and examined in chief without objection on the part of the defence. In cross-examining the witness, the prisoner's counsel asked him if he had ever been a slave, to which he replied that he was once the slave of *Mrs. Robinson,* and since her death, had become free, and was now free, and had been told by many gentlemen that he was free. The Attorney General was then called upon by counsel to produce evidence of the freedom of *Charles Robinson,* which he declined doing, whereupon the defendant moved to exclude his testimony already given, which the court refused. The prisoner also offered a free

man of color, at the same time, to prove that *Charles Robinson* passed as the slave of *Mrs. Robinson* ten years ago, which evidence the court refused to hear.

We think the District Judge did not err in refusing to strike out the testimony of the mulatto, *Charles Robinson*, which had been received without objection; and this for two reasons; first, because the objection to his competency came too late, and, secondly, because his whole statement upon the cross-examination taken together, shows that he was competent.

I. The objection came too late. There is no averment anywhere that the alleged grounds of incompetency were only discovered on the cross-examination and there are reasons to suppose that they were not first discovered then. The defendant has a right to examine the witness upon his *voir dire* previous to his being sworn in chief; and the color of the witness would naturally suggest an inquiry into his condition. Another reason for supposing that the defendant was not surprised by learning, on the cross-examination, that *Charles Robinson* had once been a slave, is that he had a witness on hand to prove the fact. Now the defendant cannot be permitted thus to take the chances of the witness' testimony if it be favorable to him, reserving a right to object to his competency if unfavorable.

II. In the same breath that the witness stated he was once a slave he stated that he was free. " When the objection to the competency of the witness arises from *his own examination*, he may be further interrogated to facts tending to remove the objection, though the testimony might, on other grounds be inadmissible. When the whole ground of the objection comes from himself only, what he says must be taken together, as he says it." 1 Green's Ev. § 422. In the *State* v. *Cecil*, 2 M. 208, where even the master was called to prove the incompetency of a witness, and swore that she was once his slave, but he had liberated her, the court could not require the written act of manumission, but remarked that the declaration of the master must be taken *in toto* and it established her emancipation in the same breath. In the case of *Roebuck* v. *Curry*, 2 An. 998, relied upon by the appellant, it appears that the objection was taken *in limine*, and the Judge refused to hear the witness at all until proof of his emancipation. There was a presumption raised that the witness offered was a slave. It could only be removed by legal proof, and the writing was required, which (the court remarked) was stated to be within the immediate reach of the party offering the witness, and who failed to produce it, though time was allowed for the purpose.

III. The case of the appellant was not strengthened by the offer of *Louisa J. Parker*, f. w. c., as a witness, to prove that the boy, *Charles Robinson*, passed as the slave of *Mrs. Robinson* ten years ago; and the court did not err in refusing to hear her to this fact, because she was not offered until after *Charles Robinson* had been examined without objection, and there was no allegation or pretence that the fact had just been discovered. " It was the duty of the party taking a bill of exceptions to state every fact necessary to establish the error complained of. In the absence of such proof, the presumption is in favor of the opinion rendered by the judge *a quo.*" Porter, J., in *Pilié* v. *Lalande*, 7 N. S. 650.

The judgment is, therefore, affirmed with costs.